**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-05-HRW

JEFFREY RUMBAUGH                                                          PETITIONER

VS:                         **MEMORANDUM OPINION AND ORDER**

TERRY O'BRIEN                                                            RESPONDENT

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Jeffrey Rumbaugh, an individual presently confined at the Federal Correctional Institution ("FCI") in Ashland, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 and has paid the district court filing fee.

This matter is before the Court for screening. 28 U.S.C. § 2243; *Demjanjuk v. Pertovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

## CLAIMS

The petitioner challenges a conviction for a prison infraction on the grounds that the disciplinary proceedings violated (1) Bureau of Prisons policy and (2) his due process rights.

## FACTUAL ALLEGATIONS

The following is a summary or construction of the allegations contained in the instant petition and exhibits in an attached Appendix.

The relevant events are alleged to have occurred at the petitioner's previous place of incarceration, the Satellite Federal Prison Camp Millington, in Memphis, Tennessee, and they begin on September 6, 2004, when Bureau of Prisons ("BOP") personnel were conducting counts of the

prisoners.  According to institutional memoranda, four prisoners, including the petitioner, were not where they were supposed to be and so an incident report was written on each of them; later, the charges against each were re-written to upgrade the charge to escape.  Appendix at pages 13-16 [hereinafter "App." immediately followed by the page number].

Petitioner Rumbaugh provides no information on the other prisoners, beyond their names. Regardless, Rumbaugh was ultimately found guilty of the offense of escape and was punished with 30 days in disciplinary segregation, disallowance of 27 days of good conduct time, and a disciplinary transfer.  App. 7.  He claims to have exhausted his appeals through the Bureau of Prisons administrative remedy program and attaches a copy of the June 28, 2005 decision of the BOP's National Office (App.3), Remedy No. 36029A2, upholding the conviction, finding that the required disciplinary procedures were substantially followed, and ruling that the greater weight of the evidence supported the decision.

Six months later, the petitioner has come to this Court to challenge that disciplinary decision. He complains that his incident report was actually re-written twice, for a total of three incident reports, in contravention of 28 C.F.R. §541.17(i), which requires only a "single Incident Report" for continuous conduct.  App. 26.  Further, the last two reports, for the serious charge of escape, did not even go before the Unit Disciplinary Committee ("UDC"), although policy requires that step before a matter can go to a Disciplinary Hearing Officer ("DHO"), and yet his case went to a DHO.  28 C.F.R. §541.16 (App. 25).

The petitioner claims that he did not get 24 hours' notice of the charge prior to the DHO hearing, which is allegedly contrary to both BOP policy (App. 25) and the due process demands of the U.S. Constitution, the petitioner citing *Wolff v. McDonnell,* 418 U.S. 539 (1974).  Nor did  he waive the notice requirement pursuant to 28 C.F.R.  §541.17(a).  Further, the petitioner claims due

process violations based on the DHO's decision being arbitrary and not being supported by sufficient evidence of guilt to satisfy due process demands, as is required under *Superintendent v. Hill*, 472 U.S. 445 (1985).

The petitioner seeks a reversal of the decision, restoration of the 27 days of good conduct time, and expungement of the escape incident from his prison record.

<u>DISCUSSION</u>

The Court begins with an examination of the due process required by the U.S. Constitution for prisoners facing disciplinary action, as it has been delineated by the Supreme Court of the United States in a few well known opinions. When a prisoner is faced with the loss of good conduct time or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," he is entitled to certain due process protections. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Since the instant penalty included the loss of good conduct time, the petitioner was entitled to certain procedures. According to the Supreme Court, the following procedures must have been provided for him: (1) a 24-hour written notice of the charge; (2) a qualified right to call witnesses; and (3) a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition, all as set out in *Wolff v. McDonnell,* 418 U.S. at 564-65.

The Supreme Court has separately ruled on the standard of evidentiary support sufficient to satisfy constitutional due process. Due process requires that a prisoner's good conduct time cannot be forfeited unless there is "some evidence" of his guilt. *Superintendent v. Hill*, 472 U.S. at 455-56. In *Superintendent v. Hill*, the Supreme Court further wrote:

> Assuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some

3

evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55.

This Court next sets out its analysis of whether the instant petitioner's disciplinary proceedings complied with these constitutional standards and with the referenced BOP regulations which he claims were not followed. The Court concludes that there was no cognizable error in the proceedings. The petitioner's own documents belie most of his allegations. Accordingly, the Court will deny the petition for the reasons set out below.

The petitioner's initial incident report of September 6th (App. 17) was written by an officer named Russell, who was checking the grounds during the count. He has written therein that he first cleared the outside area and yet later saw Rumbaugh and another inmate "walking on the track near the garden area." Russell further reports that the petitioner surrendered to him without incident, he took Rumbaugh to segregation, and he then wrote an incident report charging Rumbaugh with Being in an Unauthorized Area.

In the section of the incident report form labeled "Committee Action," it is reported that Rumbaugh's explanation for his whereabouts was, "I was cleaning the bathrooms and we came around the track in the wood area." The form concludes with the UDC's disposition: On September 9, 2004, that committee referred the matter to be heard by a Disciplinary Hearing Officer ("DHO") because of the "seriousness of the offense." The UDC also recommended thereon that if Rumbaugh should be found guilty, he should be penalized with the loss of good conduct time, a stay in disciplinary segregation, the loss of 6 months of visitation, and a disciplinary transfer.

Two re-writes of the incident report occurred prior to the DHO hearing, however. The same

4

officer who wrote the original charge wrote another report ten days later, on September 16th.  In it, Russell states that the incident report was being re-written "to reflect the charge of escape," a more serious offense.  App. 18.  Finally, on October 28, 2004, a third incident report was written by a different penal officer, who had been involved inside the prison, in a "bed book/ picture card count" in the prisoners' cells, a count which was being conducted in connection with the September 6th outside search.  App. 19.  Officer Piggee reports that he and another officer found that Rumbaugh was not in his cell or bed.  The indoor count had not been mentioned in the first two reports, and this officer explains that this last incident report of October 28th was being re-written to give the petitioner "better notice of the charges."

The Court notes that the petitioner was charged and made to defend his conduct based on only one "single" incident report.  Contrary to his contentions, he was not subjected to three reports and three adjudications all based on the same conduct.  Thus, no violation of the "single" report policy.

With regard to the claim that the latter two re-writes did not go to the UDC before going to the DHO, as is discussed below, the record is contradictory.  However, it does not matter herein.  The UDC clearly thought that the original charge, *i.e.*, Being in an Unauthorized Place, was serious enough to justify a full DHO hearing and to warrant a full panoply of penalties, penalties even more severe than those ultimately imposed.  It reasons that with such a strong UDC evaluation and recommendation on a lesser charge, there was no need for any additional UDC consideration of the charge in its later, more severe form.  It is clear that UDC referred the matter of Rumbaugh's location on September 6, 2004, to the DHO, and that is all that is required by the policy on which the petitioner purportedly relies.

Also, the October 28th incident report, like the previous two reports, has the signature of the correctional personnel who delivered a copy of the charge to the inmate. This latest report reflects delivery of the final version of the charge to Rumbaugh at 7:30 p.m. on the 28th. On November 2, 2004, the petitioner himself signed a document (App. 12) acknowledging receipt of a notice that the hearing on the escape charge would be held on the next available date; he also indicated thereon that he did not desire to have a staff representative or any witnesses at the hearing. Additionally, he signed that he had received notice of his rights before the DHO. App. 11. The DHO hearing was held on November 9, 2004. Therefore, the petitioner's claim that he was not provided with the due process requirement of 24-hour notice of the charge must fail, his own record instead supporting the fact that the first two of *Wolff*'s procedural requirements were provided.

 On November 17, 2004, the DHO issued his report (App. 4-8), finding the petitioner guilty of Escape from an Open Institution and imposing on him the penalties as set forth above. The report shows that at the hearing, Rumbaugh denied the charge and there were no other witnesses. The DHO had documentary evidence, however, and states that he considered three memoranda authored by three officers involved in the inside and outside counts on September 6th (App. 14-16[1]) and the warden's later memorandum approving re-writing the charge the final time and approving the re-writes being "returned to the UDC on October 28, 2004" (App.13).

The bulk of the DHO report is devoted to the "written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition," in conformity with the third and last of the due process requirements of *Wolff v. McDonnell,* 418 U.S. at 564-65. Indeed, the DHO devotes two typewritten, single-spaced pages to the explanation of which evidence he found relevant and why

---

[1] The petitioner provides only page one of Russell's apparently longer memorandum.

he "believes the eyewitness accounts of Officer's Shaw, Piggee, and Russell over your account of the incident."  App. 6-7.  In another lengthy passage, the DHO justifies the severity of the punishment, writing that such discipline is important to the BOP's ability to maintain a low security camp and that the petitioner's transfer to a prison is "because you are in need of an institution that can afford you more structure and greater supervision."

In short, this Court finds that both the spirit and the rules contained in the Supreme Court's authority and in the BOP regulations were followed.  As to the end result, there was clearly "some evidence" of his guilt.  *Superintendent v. Hill*, 472 U.S. at 455-56.  The petitioner plays a shell game as to where he was/was not at certain times that September 6ᵗʰ, based on three different officers' written reports of that date.  Contradictory details are not surprising from three officers having three different vantage points, as is illustrated in RASHOMON.[2]

It must be remembered that, under *Superintendent v. Hill*, judicial review of a prison disciplinary decision does not involve a redetermination of an inmate's innocence or guilt.  To the extent a prisoner contends that one person's testimony is more credible that another's, independent assessment of witnesses' credibility is not required.  *Id.* at 455.  Additionally, the credibility determinations of hearing officers cannot be disturbed.  *See Wagner v. Seely*, 915 F.2d 1575, 1576 (7ᵗʰ Cir. 1990) (unpublished), *cert. denied*, 501 U.S. 1219 (1991).

Upon the presentation of a prison disciplinary decision, the role of the federal court is merely to ensure that the prisoner was afforded certain procedures, the action against him is not arbitrary,

---

[2]  The classic Japanese film showing three versions, by three different observers, of an incident occurring in the woods between a woman, a Samurai, and a bandit (1950).

7

and the ultimate decision has some evidentiary support.  *Superintendent*, 472 U.S. at 457.  In the

case *sub judice*, this Court finds no regulatory or constitutional error in the disciplinary proceedings

as the petitioner has presented them.  Nor can the Court conclude that arbitrariness had any role to

play.  Despite the petitioner's denials, there is "some evidence" of the petitioner's guilt and his

petition will be denied.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that the petition of Jeffrey Rumbaugh for writ

of habeas corpus is **DENIED**, *sua sponte*; the action will be **DISMISSED** from the docket of the

Court; and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order

in favor of the respondent.

This March 3, 2006.

Signed By:

*Henry R Wilhoit Jr.*

**United States District Judge**

8